Case number 2014-3601, Javier Luis v. Awareness Technologies. I'd like to invite you to the stage, 15 minutes per side. Ms. Newbern, Mr. Wiggins, will you help? Good morning, Your Honors. I'm Alastair Newbern from the Vanderbilt Appellate Litigation Clinic. I'm appointed counsel for appellant Javier Luis. With the court's permission, argument today will be made by Clayton Wiggins, who is a third-year law student and has been certified under this court's student practice rule. And I'm afraid we have to ask for a little indulgence from the court this morning because Mr. Wiggins woke up with very little voice. But he's going to give it his best shot. Thank you. Thank you. May it please the court? Your Honor, I'd like to reserve three minutes for rebuttal. Why don't you get yourself some water right at the outset, if you've got some? Yes, ma'am. May it please the court? Your Honor, I'd like to reserve three minutes for rebuttal. Your Honor, the district court correctly found that Mr. Luis had adequately pleaded that the Wiretap Act was violated when thousands of his emails and instant messages were intercepted through Awareness Technologies' proprietary spyware called WebWatcher. The district court erred, however, in dismissing Mr. Luis's claims because it failed to recognize that, one, it was Awareness Technologies itself that intentionally intercepted his communications in violation of Section 2511 of the Wiretap Act. And, two, Section 2520A of the Wiretap Act provides a private right of action for violations of Section 2512 against spyware manufacturers. A holding otherwise incentivizes Awareness and companies like it to continue to manufacture and market products that are specifically designed to violate the privacy rights that the Wiretap Act intends to protect. As a threshold matter, because... It was designed to do more than that. It was also designed to be of assistance to parents with respect to children about what they're using electronic devices to do. I mean, it's not simply only designed for the husband or the wife to listen in or try to find out what the other spouse is doing, right? Well, Your Honor, important under the Wiretap Act, under Section 2512, is that WebWatch was designed by Awareness to be primarily useful for surreptitious interceptions. The fact that it can be used for other legitimate purposes, potentially, although the record reflects none of those uses, nor advertising for those uses, but the fact that it could be used for those doesn't change the fact that it is primarily useful for surreptitious interceptions. Why do you say primarily? It would be used for parents' surveillance, let's say, of children as much, I would think. Wouldn't you? Not according to the record, Your Honor. The record shows that it was marketed to steal unconsenting adults' private communications, and Mr. Luis's pleadings have shown that that's exactly what happened with him. The primarily useful language comes from Section 2512, where it prohibits the manufacture and market of products that are primarily useful for surreptitious interceptions. And the test for that we saw in the US v. Spy Factory case out of the Southern District of New York, and we looked to the objective determination of a device's most probable use, and the court there said that if the dominant features of a product make it primarily useful for surreptitious interceptions, then that it is in violation of the act. In this particular case, the computer, was it owned by both the husband and the wife, or do we know? Well, here, Your Honor, that's a disputed fact that could be resolved at discovery, but Mr. Luis's pleadings, which are given presumptive truth here, have referred to it as Kathy's computer and the home computer. But it's worth noting also that the Wiretap Act has no exception for computer ownership. Consent is an exception. Being party to the communication is, but computer ownership is not an exception under the act, Your Honor. Maybe you could help me with something I've been trying to figure out here. Yes, Your Honor. Where specifically in the complaint, and I don't remember how far along in the complaints that were filed here, the final one is, but where in the final complaint is the substance of his complaint against awareness? Where do I find that? Yes, Your Honor, and it's worth noting that Mr. Luis, under the Federal Wiretap Act, has stated two separate claims against awareness. One is for violating Section 2511 as the liable interceptor because it was awareness technologies that acquired his communications when they were stolen. In Document 39, Your Honor, under Section 2511, and I'm quoting Mr. Luis here, WebWatcher intercepts communications live as they are being written and communicated between senders and receivers. Continue to quote, WebWatcher immediately and instantaneously routes the intercepted communications to its servers. That paragraph is? It's page ID 327, paragraph 77, Your Honor. Okay. Where it stores, maintains those for subscribers later to retrieve. So the complaint under Section 2511 is not only that his communications were intercepted by WebWatcher, but that it was awareness itself that intercepted them, and in that regard, awareness is in the same position as the software manufacturer in PharmaTrac out of the First Circuit. That also was a software manufacturer that acquired communications through its software and maintained those communications on its servers. That's exactly what happened here, and the First Circuit found that that company had also itself intercepted. Okay, but let me maybe condense this into what my concern really is. In paragraph 90, I think it's paragraph 98 of your amended complaint, you say that defendant awareness intercepted oral communications. Now, does any of this technology that awareness makes intercept oral communications? The record doesn't reflect the full functionality of WebWatcher or all of awareness' products, Your Honor. And Mr. Louise in the record explains that he wasn't sure how much, the extent to which his privacy had been violated by awareness. What he does know is that his e-mails and instant messages were at a minimum intercepted. And again, further liability. I'm worried about what you actually claim in the complaint. I mean, that's, I've been trying to kind of, because we usually say what you're complaining about in the complaint is what we're looking for, and I'm trying to find it here real quickly, and I may or may not be able to do that because my finger isn't working as fast as I would have liked. In paragraph 98, you say defendants and each of them, but awareness is the one we're concerned about here, intentionally intercepted, endeavored to intercept, or procured other persons to intercept oral communications. That's paragraph A. Paragraph B, defendants intentionally disclosed or endeavored to disclose to other persons the contents of oral communication. Defendants, C, defendants intentionally used or endeavored to use the contents of oral communications. And so it's one thing to be complaining that the computer communications, you know, e-mails, texts, well, probably not on the computer, but e-mails at least, were intercepted by awareness's technology, but I'm struggling with the specificity with which this is pled, that it is oral communications that you're complaining about. So straighten me out on this. Well, with regard to oral communications, Your Honor, Mr. Luis, again, he stated that he was unsure if it was only oral or also, or rather if it was only his e-mails and text instant messages that were intercepted or also oral messages. So he's unclear. The record doesn't reflect, again, the extent to which his privacy was violated. He's got a telephone, I take it. Yes, Your Honor. Or it could be, again, this would have to come out on discovery, the exact methods that the product worked, but it could be something like Skype messages perhaps that were on that computer and if the computer was used for oral communications. The record certainly doesn't show that WebWatcher is not capable of doing that, and, in fact, it shows that it is a device that has been manufactured with broad capabilities. And, again, just to be sure, under Section 2511 for the electronic communications, it is awareness itself that intercepted those communications. The magistrate judge said that it was not awareness itself, but if you look at the way the product works, it takes communications as they're being transmitted and it automatically routes those communications to awareness as servers where they are maintained. And at that point, the WireTap Act under Section 2511 has been violated. That was similar to... That happens even if it's for a morally good reason. I mean, you're going to condemn every single episode in which that occurs, even though there may be very good reasons by someone who is a joint owner of the computer to do this. I don't... I mean, the purpose of the statute is not to outlaw every single one, is it? As awareness used against non-consenting adults, it is. But I do want to distinguish, Your Honor, between companies like Google that might receive communications, but there is consent. And consent is an explicit exception under Section 2511. Also, the intercept must be intentional. And the PharmaTrack and CarrierIQ cases perhaps distinguish that. PharmaTrack, although it had itself intercepted communications because they were maintained on its servers, was found not to have intentionally done so because there was a glitch in its software. It was an accident. Unlike PharmaTrack, however, WebWatcher did this intentionally. There was no accident. WebWatcher worked exactly the way awareness intended it to. And there's a case, the Henry CarrierIQ case out of California. You're saying that every one of these type communications we would hold, have to hold here, whatever the motive is, is a wiretap that is compensable as an illegal overhearing, and therefore damages should be paid. Every one. Every one that follows the facts of this case, Your Honor, where awareness has not only manufactured a product to steal communications. Nothing in the record shows that there's a banner on the screen or that there's some kind of consent required. In fact, the marketing materials show that WebWatcher marketed this product, distinguishing itself from other, quote, spy programs. And this is on page ID 677. It said that with those spy programs, data is stuck on a machine or it's emailed over unsecure lines. And they're highlighting the fact that by awareness acquiring communications on their server, they provide a benefit added to customers who simply log on to a website. We know it can be used for legitimate purposes, don't we? Well, it can, Your Honor. But as the court in Spy Factory pointed out, the Senate report accompanying the original Wiretap Act back in 1968 mentioned that watches, for example, or tie clips that had microphones in them were per se illegal. They were primarily useful for surreptitious interceptions. It didn't matter that the watch might tell the time or the tie clip might keep the tie straight. And that's exactly what we have here. We have a product that has been marketed to people that are interested in stealing communications from adults who have not consented. And the fact that there are potentially legal uses for it does not diminish the liability under Section 2511 or 2512, Your Honor. Well, I gather that you agree with the district court's part of saying this was an intercept. Yes, Your Honor. Where you think the district court went wrong was in saying that awareness was not the party engaged in the intercept. That was Zhang, the husband. And you think that's wrong because you think that awareness itself was engaged in the intercept. Is that right? Mr. Lewis, Your Honor, yes, Your Honor, Mr. Lewis has pleaded that his communications were intercepted instantaneously as they were being communicated and they were automatically routed to awareness's servers. And at that point, it doesn't matter if customers log on to see them or not. At that point, the intercept is complete and Section 2511 has been violated, Your Honor. So awareness, your position is it's doing more than simply manufacturing and selling this spyware. It itself is actively intercepting in real time because it sends it to its own servers in California. Yes, Your Honor, and that was the holding in the Henry Carrier IQ out of the Northern District of California just last year where that company, the same setup, it had software that automatically routed personally identifiable information from numerous unnamed website visitors, and it routed those communications to the Carrier IQ servers. Do I recall that part of the record that even if, or the advertising, even if say the sender of the message, Catherine, deleted her, after she communicated she wanted to delete it from her computer, that this spyware would still have captured it and sent it to its server? Yes, Your Honor, this spyware does not operate on stored communications. It operates, in this instance, on communications as they're being transmitted. And its marketing points out that instant messages are seldom saved on a computer, and part of the intercepted messages here were instant messages. But that's another benefit added to the customer because they don't have to be saved on the computer. Awareness through WebWatcher acquires those communications. And if we set aside for a minute the technology and think about the service that awareness is providing, the Section 2511 liability becomes clearer, Your Honor. Awareness is using, the same as if this were a tape recorder, awareness under Section 2511 is pressing the record button, stopping it, and taking the cassette tape back to their office, and they hold it. And then when customers want to come in and hear it, they come into the office and hear it, except for here we're talking about a website that they log on to. The intercept has occurred regardless of whether the customer comes back to see or to hear the message, Your Honor. I'll see you when my time's up. Thank you, Counselor. May it please the Court, my name is Bernard Wharton. I represent Awareness Technologies in this manner. I want to first apologize a little bit because I have a lot more knowledge about how my client's product works. And as the Court is aware, this case had a companion case where Mrs. Zhang sued Mr. Zhang and a bunch of Mr. Zhang-related companies, which were also defendants in Mr. Luis's case. That companion case went through discovery. So a lot of what your questions are, I know the answers to because of that. Now, I understand the magistrate court didn't have that knowledge and shouldn't use any of that to rule on the motion to dismiss that we filed. How many cases have been reported concerning your client's device here as to whether it is a wiretap when it's used? Any? I honestly don't know, Your Honor. I am not aware of any cases. This is the first case. To my understanding. And part of what I want to tell the Court, and the Court can take it for what it wants to, how Mr. Luis alleges our product works is completely incorrect. It's a physical impossibility for how our product works. And I would submit under the physical facts rule, you know, you can't have a helicopter fly underwater. And what the magistrate court did was the CEO of Awareness Technologies, Mr. Brad Miller, filed an affidavit with the motion to dismiss. And the magistrate court used that information in Mr. Miller's affidavit while ruling on the motion to dismiss. She properly did. And what Mr. Miller, and certainly in hindsight, with all the questions that have come up, I would have put more information in their head. I drafted the affidavit, but that's neither here nor there. But what Mr. Miller is clear about saying is that a user of WebWatchers can't view communications at the time those communications are being transmitted. There is no contemporaneous intercept of the communications. Wow. And so by... I mean, it looks like it's automatic. It looks like the communications are automatically picked up and carried by the server, every one of them. It falls within the app or the device. So it's like somebody calling you on the telephone. I mean, it's immediate, and the recording of it is immediate. Right? No, that's not how the product works. Now, I understand I'm dealing with communications. Why is it not correct? Because I'll tell you, the product works by going into the permanent storage memory of the computer on which the software is installed to gather the information. It doesn't gather it while it's being transmitted. It doesn't gather it while it's in this transient electronic storage. It goes to the permanent memory of the computer on which the software is installed. So it doesn't reach out to Mr. Lewis's computer. It only deals with the computer that was in the Zhang household. The computer itself first records it, and then it goes to the server. Correct. How long does that take, that delay? How long is that delay? I don't know. Like a few seconds? I don't know. I assume it's a very small amount of time from however long it takes a computer to receive something electronically to then put it in its permanent storage memory. But what the statute deals with is a contemporaneous intercept before it goes to permanent storage memory. Once it goes into permanent storage memory, then it's not an intercept anymore if it's retrieved from there. Yeah, but your marketing materials say it's, quote, near real time. I understand what the marketing materials say. That sounds very close to contemporaneous, doesn't it? Well, only in the dictionary sense, not in the legal sense of what those words mean. The marketing materials that were attached by Mr. Lewis don't contain any specific allegations, or the complaint doesn't contain any specific allegations, that those marketing materials are for the product purchased by Mr. Zhang and installed on the Zhang computer. Well, those marketing materials use the term WebWatcher. Sure. The inference would be that that's your client's WebWatcher. It's an inference, but there's not an allegation that that's the same product that was actually put on the Zhang. This is a pro se complaint, and can't we construe inferences, especially under Rule 12b-6, in favor of the draft? You certainly can. I will also note he's a pro se law school graduate, and that's in the record. He graduated from University of Florida Law School, but didn't take the bar exam. What's that got to do with it? Well, I'm just saying there's pro se and there's pro se, Your Honor. He's less pro se than most pro se, is that what you're trying to tell us? He is a pretty well legally educated pro se person. Do you want us to hold that this is not contemporaneous and therefore is not a wiretap? Actually, no, Your Honor. What I would submit is the issue of whether a manufacturer is liable under the Wiretap Act takes precedence over whether an intercept occurs, because whether an intercept occurs or not, my position is under the Wiretap Act there is no manufacturer liability, and that the allegations in the complaint don't state that awareness technology itself intentionally intercepted anything from Mr. Lewis to the Zane computer. Your position would be that once awareness sells the WebWatch or whatever it is, software, to the user, it is the user who is intercepting, not awareness. Correct. If there is, and I will submit that I'm not going to agree that an intercept occurs based on how the product operates, but my point is the intercept issue isn't the threshold or primary issue. The issue here is whether there is a manufacturer liability under the wiretap. Right, but isn't the problem I foresee is that according to the allegations and the advertising material as part of the complaint, your client was more than simply a manufacturer. I mean, it actually operates the software, see, because it captures what's done and then sends it to its own server in California. That's a little more than just a manufacturer of like a radar detection device to stick in your car. There's nothing that that radar manufacturer then maintains a website that sends signals. I mean, your client is doing something more than solely manufacturing, isn't it? No, I don't think so. I think the software provides a, for lack of a better description, cloud storage system for this material to be put into, and then the purchaser of the software has the password access to go and look at his information in storage in this. Yeah, but it's not just looking at storage in his own computer that's captured it like a, what do they call it, a logger. No, it is. The only thing the person can view is the material captured from his computer by the software. It's been sent to Awareness's server in California. But he can see whether it's there. The only difference is he may be the only person to have access to the server storage versus people in the household that can use his computer. But it is Awareness's storage, iCloud storage, on their server in California. I believe that's what's alleged. I can't say for certain that the product on the Zane computer is the same. But I know that's what's alleged. And we're dealing with Rule 12b-6, so we have to assume that unless they're frivolous or some, you know, that what the complaint is is what we take as true. I mean, you may win on summary judgment and all that, but we're talking about, you know, did they get the first base? You're not at that stage yet. Do we know anything about the ownership of the computer that this was attached to? I do, Your Honor, and that's from the discovery in the companion case. We don't know from the record here, then. The record doesn't have that information. What does the companion case show? I'm just curious. Mr. Zane owned the computer. He purchased it, and he owned it and operated it. Mrs. Zane used it. So it was Mr. Zane's computer. You know, I'm just curious, your client's CEO's affidavit, technically we can't even look at that, can we, in a 12b-6 because it's not part of the complaint. No, but it can be used in the motion to dismiss proceedings if the magistrate, if the trial court, magistrate court incorporates it, and she did in her opinion. Yeah, but maybe that was improper because they didn't convert it to a Rule 54. You know, a 56, I mean, it wasn't converted to a summary judgment. So it seems a little improper to even pay any attention to your client's affidavit. I don't think it's improper. I think the court, and there's a case law we've cited in our brief, that other materials can be used in a motion to dismiss proceeding. If they're attached to the complaint. But, no, even other things that are central to the complaint that can be, even if filed by other parties other than the plaintiff. Now, granted, it's a discretion of the court to do that. The court can choose not to. But that particular issue wasn't really at issue in the trial court level. But clearly the magistrate court used Mr. Miller's affidavit in her report and recommendation. Well, that affidavit, it says nothing about when awareness itself acquired the communications, does it? There's nothing in it. No. As I said earlier, in hindsight, I would have put a lot more information on these specific issues. But I'm not a mind reader. If I was, I wouldn't be a lawyer. I'd be at the horse track. What happened to these other cases? Which other cases, Your Honor? There were associated cases, right? In Mr. Luis's case, there were all these other Mr. Zhang and Mr. Zhang-related defendants who were sued. They all settled. And awareness was the only defendant left in the case. Depositions and all were taken in those cases. It was taken in the companion case of Mrs. Zhang. So there's a record in those cases. Correct. But none in this case. None in this case. Mr. Luis's deposition was taken, but it was taken as part of the companion case. Because when we filed our motion to dismiss, and the cases were consolidated, nothing more happened really in Mr. Luis's case because we were all waiting for the motion to dismiss to be ruled upon by the district court. But everything else was going on in the companion case. Just wanted to come back to the manufacturer liability. The claim by Mr. Luis that awareness is liable even as a manufacturer because it's actively engaged, I don't think the allegations in the complaint specifically state that. I know Judge Batchelder noted that count one talks mostly about oral communications as Mr. Luis pleaded. But what I also want to say is the actual language of Section 2520A talks about people who intentionally intercept or disclose or disseminate information, and the class of defendants, you know, the language subsequently amended to say those that engaged in that violation or those types of acts. And I submit that the allegations in the complaint don't meet that standard, that awareness was actually intercepting or disclosing or disseminating that information. And as the magistrate noted in her opinions, has such been followed by Northern District of Ohio and another Southern District of Ohio case, there is no manufacturer liability. You know, she analogized it to gun manufacturers, you know, can't be held liable when someone uses their product to harm someone. All you've done so far is file a motion to dismiss. Correct. No answer has been filed. Correct. Yeah, there's no responsibility. You've got a defense if you lose this. You've got a defense there that your man owned the computer that the device was attached to and all of that. Correct, although I'm not going to characterize Mr. Zang as my man. I'm the awareness technology, he's not the ex-husband. Yeah. No, if, you know, the motion to dismiss is overturned by the court, we certainly go back to the beginning, file an answer, and conduct whatever discovery is necessary, and then I'll be filing a summary judgment motion, which I think the trial court will grant based on my knowledge of the actual facts of the case. Understanding we're not dealing with my facts, but we're dealing with Mr. Lewis's allegations, even under those allegations, I don't think that he has really established that an intercept has occurred when you factor in Mr. Miller's affidavit. I understand the magistrate court. Let's assume we can't factor in. I mean, nobody objected to that. I understand that, and so we could argue that that's been waived. But ordinarily, we wouldn't be looking at, unless we converted it to a motion for summary judgment, we wouldn't be looking at extraneous materials such as that. So let's assume we don't have that. What I would say in response to that is Mr. Lewis has not made specific and sufficient allegations in his complaints that the materials he attached in his description of how those materials describe WebWatcher are actually connected to the Xang software on the Xang computer. He has not made that specific allegation. He makes this allegation that this is what WebWatcher does based on these things, but he doesn't ever say that that's the product that was used to allegedly intercept my communications. I see my time is up. Thank you, Your Honor. Thank the court. Your Honor, the affidavit here simply has no bearing on the 2511 analysis. An intercept occurs when a communication is acquired as it's being transmitted. It doesn't matter when customers view it or even if they ever view it. So in that regard, the affidavit is not dispositive, and it's not even relevant to the Section 2511 analysis. Mr. Lewis has alleged that WebWatcher was used to intercept his communications as they were being transmitted, and Awareness's marketing materials, in fact, do say that those communications are sent to its servers. Additionally, the timing of when the intercept occurred, it's not the Columb Vigon case out of this circuit in the Eastern District of Tennessee actually adopted the Sys McKewitt's router analysis out of the Seventh Circuit. And basically, what Columb Vigon and Sys McKewitt stand for is that an email that is intercepted while it's being transmitted is intercepted under Section 2511. And if the timing mattered, then a smart programmer could simply make a product like WebWatcher to wait a few seconds or a few minutes. But it doesn't operate on stored communications, and when people are sending messages back and forth and those messages are taken, that is an interceptor. In order to reverse here, all we have to do is agree with you about that one point, or is that wrong? For Section 2511, Your Honor, yes. that Awareness itself intentionally intercepted Mr. Luis's communications, that he has pleaded that. Again, that would put Awareness in the same position as Henry Carrier IQ, where that company was found to have itself intentionally intercepted in the Northern District of California. Recent news shows that that case was actually settled out for $9 million, Your Honor. So Awareness, I would direct Your Honor's attention to Henry Carrier IQ for the 2511 claim. For Section 2512, the claim for manufacturer liability, the magistrate judge correctly found that Awareness designed WebWatcher in a way that violates or that is primarily useful for stealing communications. Going back to the watch analogy there, its primary use, even if people use it for legitimate purposes, its primary use is for stealing communications, and all of the marketing materials in the record demonstrate that. It is useful for stealing the communications of spouses. They said that when you have your online account, you simply log on to view these messages at your leisure. What gives you the right, a private right of action under Section 2520? Section 2520A provides a private right of action, Your Honor, both for Section 2511 and Section 2512. That was the holding in a series of district courts, such as Tosh, Your Honor. So Public Awareness engages in the intercept, right? Yes, Your Honor, and Leggins and Karpinski out of the Sixth Circuit here, out of the Eastern District of Michigan and the Western District of Tennessee, say that the 2520 contemplates a nexus between the manufacturer's liability and the harm. That was missing in cases such as Twergy, Peavey, and other cases that have held otherwise, where they just were a plaintiff's merely alleged possession, but no use. But here, there is the nexus that the Leggins opinion required. Mr. Lewis's communications have been intercepted. You have to find that this is spyware in the sense that it is designed to secretly record something that it is immoral to record. Or what about the problem that you can use this in very legitimate ways? What happens? I don't understand on that second point. What happens if the device can be used for, like if a telephone or many other devices, for a legal or for an illegal situation? What do we do with that? Yes, Your Honor, this, again, is distinct. WebWatch for Awareness has not only designed it for illegal purposes and marketed for it. Do you find that it is somehow designed only for illegal purposes? Under Section 2512, you would have to find it primarily useful for Section 2512 liability. But under Section 2511, Your Honor, the technology that Awareness uses isn't really relevant to the 2511 analysis. It's the service that they provide. So if this weren't spyware on a computer, if this was a wiretap on a telegraph line, it's Awareness that is taking communications without consent and holding those communications. What they do with them, we don't know. Discover would show. But there was no consent here. Mr. Luis has pleaded that in paragraph 26 and other paragraphs of his complaint. And so his communications were protected under the Wiretap Act. Thank you, Counsel. Thank you, Your Honor. I think I can speak for the whole panel. We say we'll be looking forward to seeing how you do when you have a full voice because you certainly did a good job with only part of one. Thank you, Your Honor. Thank you. The case will be submitted.